ANNA F. ARDENGHI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68201. Promulgated February 17, 1938.

*Cleaveland J. Rice, Esq.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency in income tax for the year 1930 in the amount of $7,018.73. The facts have been stipulated and those pertaining to a particular issue will be discussed in connection with that issue.

The first question is whether or not the Commissioner erred in including in the petitioner's income $38,418.72 representing dividends, $2,170.84 representing interest, and $275.26 representing interest, which amounts were paid to the petitioner in 1930 from the estate of her deceased husband. William Whitman Farnam (hereinafter referred to as the decedent) died on June 28, 1929, in New Haven, Connecticut. He left no issue but was survived by his wife, Anna F. Farnam, the petitioner in this proceeding. The latter married Vincent R. Ardenghi on October 7, 1930. She filed an individual income tax return for the calendar year 1930 with the collector of internal revenue for the district of Connecticut. The residue of the decedent's estate, after provision for specific bequests, was left to the petitioner. His executor was the Union & New Haven Trust Co. The will authorized the executor to advance to the petitioner out of income any sums which she might desire during the settlement of the estate. The executor paid a total of $57,326.60 to the petitioner during the period January 1 to November 7, 1930. The executor filed an income tax return for the estate for that period. The correct gross income of the estate for that period was $67,402.63, including dividends and interest in excess of the amounts which the

Commissioner has included in the petitioner's income. The executor claimed deductions in that return for Connecticut succession taxes paid on August 27, 1930, which greatly exceeded the gross income of the estate for the period. No deduction was claimed on that return for the Federal estate taxes of $127,498.44 paid on June 28, 1930. The stipulation contains a statement that the Federal estate tax and the Connecticut succession tax were paid by the executor from the corpus of the estate. We find from an analysis of the executor's accounts that the payments made to the petitioner, which the Commissioner has included in her income, were made from income of the estate. Although the petitioner received $57,601.86 from the estate in 1930 and did not report any of that amount as a part of her gross income, the Commissioner has included the lesser amounts by allocating the payments on a percentage basis to various classes of income received by the estate, some of which were not taxable, and by eliminating a part of the distribution as being estate income of 1929. The allocation is not contested.

This issue is raised by assignments of error (a), (b), and (e) of paragraph 4 of the petition. The question may be stated in this way: Where the income of an estate in process of administration is payable to a beneficiary and is actually paid to her in the taxable year, may she escape tax on the amounts received because Federal estate and state succession taxes paid by the estate during the year exceeded its gross income?

The Board held in the case of *Walter S. Gurnee et al., Executors*, 13 B. T. A. 262, that income of an estate distributed to a beneficiary was taxable to the beneficiary even though the estate and inheritance taxes paid by the estate exceeded the gross income of the estate. The Board reasoned in that case that the beneficiary's distributive share of the income of the estate was fixed by the trust instrument, was actually distributed to her, was not affected by the taxes paid by the estate or the deductions allowed to the estate and, under the express provisions of the statute, was to be included in the income of the beneficiary. In the case of *Agnes Sitterding*, 32 B. T. A. 506, estate and inheritance taxes in excess of the income of the estate were charged against the corpus of the estate and amounts were distributed to the beneficiaries and charged against the income of the estate. The Board held that the distributions were paid out of income and were properly taxed to the beneficiary. The decision of the Board was reversed, 80 Fed. (2d) 939. The court held that, since the estate did not receive enough income to pay the taxes, there was no income to be distributed and, therefore, no income to be taxed, either to the estate or the beneficiary. The Board in the case of *Rena S. McCahan*, 35 B. T. A. 943, pointed out that the distributions

there were made from corpus or from tax exempt income and, therefore, would not be taxable to the beneficiary, either under the decision of the Board in the *Sitterding* case or under the decision of the court in that case. A contention was made in the case of *Minnie L. Wolf*, 32 B. T. A. 959, that the taxable income of the estate was exhausted by the payment of inheritance taxes. The fact was that the income of the estate was actually distributed to legatees as interest on their legacies (allowable under Pennsylvania law). The Board said that there is no rule of law which requires disregard of the fact, that distributions were actually made from income, in favor of a legal presumption, that the taxes were paid from income. That decision of the Board was affirmed, 84 Fed. (2d) 390.

In each of the foregoing cases the inheritance tax paid exceeded the gross income of the estate. With all due respect to the Circuit Court of Appeals for the Fourth Circuit, which reversed the Board in the *Sitterding* case, we think the question of whether or not a beneficiary is subject to tax must depend upon whether or not the beneficiary has received a distribution during the taxable year from the income of the estate or trust. If the estate had income and distributed a part of that income to the beneficiary, it is taxable to the beneficiary, regardless of the not inconsistent fact that inheritance taxes in an amount in excess of the income of the estate were paid either from other income and corpus, or solely from corpus. Section 162 (c) provides:

In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, * * * there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

The Commissioner has determined that the distributions here taxed to the petitioner were from income of the estate. The stipulation does not show otherwise. An analysis of the receipts and disbursements of the decedent's estate indicates that the distributions to this petitioner were from the income of the estate, as the will provided. It follows that the Commissioner did not err in taxing a portion of those distributions as a part of this petitioner's income. Cf. *Jackson* v. *Price*, 74 Fed. (2d) 707.

The petitioner next claims the right to deduct the amount by which the Federal estate and state·succession taxes exceeded the income of the estate. The decedent's will provided that all inheritance and succession taxes should be paid out of the estate. The taxes paid in 1930 exceeded the income of the estate for that year by $176,622.31. That is the amount which the petitioner claims the

right to deduct. The petitioner argues that the word income, as used in section 162 (c), should be construed to include a minus quantity. She cites no authority for this contention. The word does not refer to a minus quantity. Cf. *Woolford Realty Co.* v. *Rose*, 286 U. S. 319. Under her theory a deduction which the statute expressly disallows would be allowed indirectly. Section 23 (c) of the Revenue Act of 1928 provides that estate, inheritance, and succession taxes "shall be allowed as a deduction only to the estate." That Congress never intended to allow any such deduction as the petitioner here claims is obvious when this section is read in conjunction with section 703 and the legislative history of the latter provision.

The next issue is raised in paragraph (4) (c) of the petition. The petitioner claims that the Commissioner erred in failing to allow as a loss or deficit received from a trust the sum of $1,455.94. The petitioner created a trust in October 1930. The trust was irrevocable and the income was to be paid to the petitioner for her life. The trust, during the remainder of 1930, paid transfer taxes of $1,440.94 and paid $15 as rental for a safe deposit box. The income of the trust for 1930 consisted of dividends of $6,477.81 and of tax-free interest on Liberty bonds in the amount of $1,750. The petitioner reported on her return $6,477.81 as dividends received from the trust and claimed a deduction of $1,455.94 representing expenses of the trust. The Commissioner disallowed the deduction and reduced the dividends reported by $1,455.94. Section 167 provides that where any part of the income of a trust is distributed to the grantor, such part of the income of the trust shall be included in computing the net income of the grantor. That provision applies here. The difference between the dividends received by this trust and the expenses paid by it was all distributable to the petitioner and therefore had to be included in computing her net income. That is what the Commissioner has done. She claims in addition the right to deduct the expenses of the trust. Those expenses have already been used to offset an equivalent part of the income of the trust. There is no statutory authority for allowing her a deduction or for allowing her to benefit further from the expenses of this trust. *Elsie Samstag,* 26 B. T. A. 957.

The final issue relates to the proper amount of dividends of the United Illuminating Co. to be included in the petitioner's income for 1930 on the cash basis. The corporation in question declared a dividend payable December 31, 1929, and on that date mailed checks in payment of the dividend, which checks were dated January 1, 1930. The petitioner's share of that dividend was $7,367. The check in payment of that amount was received by her agent on January 2, 1930, and that amount was included in her income tax return for 1930. The trust which she set up in October 1930 thereafter held shares of

United Illuminating Co. stock. The corporation declared another dividend payable December 31, 1930, and on that date mailed a dividend check for $10,708 to the trustees. The check was dated January 1, 1931, and was received by the trustees on January 2, 1931. The Commissioner has excluded the dividend of $7,367 from the petitioner's income for 1930 and has included instead the dividend of $10,708. The result was to increase dividends by $3,341. The facts in this case are even more favorable to the contention of the petitioner than were the facts in the case of *Avery* v. *Commissioner*, 292 U. S. 210, upon which she relies. In the *Avery* case the checks were dated December 31, and were received on January 2, whereas here they were dated January 1, and were received on January 2. The money was not unqualifiedly subject to the petitioner's demand in the years in which the checks were mailed. The Commissioner contends that since there was nothing to indicate that payment by check was mandatory there is a failure of proof that a demand for payment on December 31 would have been unavailing. A similar situation existed in the case of *Edward S. Harkness*, 31 B. T. A. 1100, and the Board there rejected a similar contention made by the respondent. The Commissioner erred in including the dividend of $10,708 in the petitioner's income for 1930.

*Decision will be entered under Rule 50.*